AO 93 (Rev. 11/13)   Search and Seizure Warrant (Modified: WAWD 2-12-2020)

FILED _____ LODGED
_____ RECEIVED

# UNITED STATES DISTRICT COURT

MAR 06 2020

for the

### Western District of Washington

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                              DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| Information associated with One Target | ) |
| Account/Identifier, for Investigation of 21 | ) |
| U.S.C. §§ 841(a)(1) and 846 and Other | ) |
| Offenses | ) |

Case No. MJ 20-5045

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in an unknown district, there is now concealed property and evidence described in Attachment B. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Distribution of Controlled Substances, Conspiracy |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of 90 days (give exact ending date if more than 30 days: June 4, 2020) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

SEAN THORNTON, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date: March 6, 2020

_____
*Judge's signature*

THERESA L. FRICKE, United States Magistrate Judge
*Printed name and title*

City and state:  Tacoma, Washington

USAO # 2020R00226

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
A SEARCH WARRANT AND PEN-TRAP ORDER**

STATE OF WASHINGTON )
) ss
COUNTY OF PIERCE )

I, SEAN THORNTON, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 503-989-7578, with listed subscriber(s) Marcos Del Rio, at 6148 Mesa Road, Reno, Nevada 89511 ("Target Cell Phone 1", or **TCP-1**), whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

## ECPA

2.      The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## Pen Register Act

3.      Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 1
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

4.      The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

5.      This application includes all the information required by the Pen Register Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Marci L. Ellsworth that (1) identifies the Federal Bureau of Investigation as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

6.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

7.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act.  Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Cell Phone without geographic limit.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 2
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

8.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that AT&T and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the Federal Bureau of Investigation, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

9.     **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

10.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

11.     I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since May of 2017.  I am currently assigned to FBI Seattle Division's Vancouver Resident Agency (VRA) in Vancouver, Washington, focusing on the investigation of organized crime, gangs, drug trafficking, and other criminal matters.

12.     Since becoming a Special Agent, I have received specialized training from the FBI, to include completing the 21-week New Agent Training course at the FBI Academy.  I have also received training in investigative methods to trace illegal proceeds and prove financial crimes, money laundering, and conduct asset forfeiture.  I have participated in multiple drug investigations targeting large scale drug trafficking organizations (DTOs) as the case agent or as an investigating agent.  During my tenure as

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 3
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    an agent, I have been involved in federal and state wiretap investigations. I have

2    debriefed defendants and witnesses who had personal knowledge regarding drug

3    trafficking organizations. Additionally, I have participated in many aspects of drug

4    investigations, including conducting physical surveillance, confidential source

5    management, providing grand jury testimony, preparing search warrant affidavits,

6    executing search warrants, and making arrests.

7           13.    Based upon my training and experience, I am familiar with drug traffickers'

8    methods of operation, including their methods of distribution, storage, and transportation

9    of drugs, their methods of collecting proceeds of drug trafficking, and their methods of

10   laundering money. I am also familiar with methods employed by large-scale DTOs to

11   avoid detection by law enforcement, including the use of cellular telephone technology,

12   text messages, counter surveillance, false or fictitious identities, and encoded

13   communications.

14          14.    The information contained in this affidavit is based upon knowledge I

15   gained from my investigation, my personal observations, my training and experience, and

16   information provided by other law enforcement officers, agents, or analysts. This

17   affidavit is intended to show merely that there is sufficient probable cause for the

18   requested warrant and pen-trap, and therefore does not set forth all of my knowledge

19   about this matter.

20          15.    Based on the facts set forth in this affidavit, there is probable cause to

21   believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Controlled

22   Substances and Conspiracy) have been committed, are being committed, and will be

23   committed by ANTONIO SOLIS, Unidentified Male 1 ("UM-1"), and others. There is

24   also probable cause to believe that the location information described in Attachment B

25   will constitute evidence of these criminal violations, and will lead to the identification of

26   other individuals who are engaged in the commission of these offenses.

27

28

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 4
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## PROBABLE CAUSE

16.    The United States, including the FBI, is conducting a criminal investigation of ANTONIO SOLIS, UM-1, and others, regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846. FBI agents based in Vancouver, Washington, and members of the Southwest Washington Interagency Gang Enforcement Team (SWIGET) have been investigating a Drug Trafficking Organization (DTO) operating in the Vancouver area. The DTO appears to be headed by ANTONIO SOLIS, who is believed to be in Tepic, Nayarit, Mexico, directing drug trafficking activities. Agents believe UM-1 utilizes **TCP-1** to coordinate the local distribution of narcotics on behalf of the SOLIS DTO.

17.    Through the use of a Confidential Human Source ("CHS-1"), agents have identified members of the DTO possessing and distributing heroin and methamphetamine at SOLIS' direction. In August 2019, CHS-1 began cooperating with the government in hopes of receiving consideration for pending state charges for narcotics possession and distribution. While CHS-1 has a criminal history, s/he has no arrests or convictions for crimes of dishonesty, but has convictions for Assault IV – Domestic Violence, Driving Under the Influence, and Disorderly Conduct. CHS-1 has provided verified and accurate information.

18.    On or about February 16, 2020, a male using Mexico telephone number 52-311-395-9125 contacted CHS-1 directly. This call was not monitored or recorded by agents. This male told CHS-1 that he wanted CHS-1 to "work" for him distributing drugs, and said that two male friends would contact CHS-1 to set up a face-to-face meeting. CHS-1 informed SWIGET Task Force Officer (TFO) Rees Campbell about this call, and told TFO Campbell s/he would contact TFO Campbell when contacted the male friends made contact.

19.    Subsequently, an Unidentified Male ("UM-1") using telephone number 503-989-7578 (i.e., **TCP-1**) contacted CHS-1. This call was not monitored or recorded by agents. CHS-1 contacted TFO Campbell with this information, and said s/he and UM-1 had coordinated a meeting in Vancouver, Washington. CHS-1 then met with UM-1 and

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 5
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    another Unidentified Male ("UM-2") at the agreed upon meeting location, on February

2    16, 2020. During this meeting, UM-1, UM-2, and CHS-1 used **TCP-1** to conduct a

3    FaceTime call with another male to discuss future drug trafficking activities.  CHS-1 was

4    able to see the name "ANTONIO SOLIS" as the contact name for this FaceTime call

5    participant, with a location of Tepic, Nayarit, displayed on the screen of **TCP-1** during

6    the call.  CHS-1 relayed to investigators that SOLIS would be coordinating a shipment of

7    narcotics, specifically heroin and methamphetamine, over the coming weeks.

8        20.    CHS-1 described UM-1 as in his mid-30's, between 5'5" and 5'8" with a

9    medium build, medium-length styled black hair, and light stubble-style facial hair.  CHS-

10   1 said UM-2 appeared to be slightly younger than UM-1, between 5'8" and 5'10" in

11   height with a slimmer build, short black hair, and no facial hair.

12       21.    On February 27, 2020, AT&T information showed that **TCP-1** is

13   subscribed to Marcos Del Rio, at 6148 Mesa Road, Reno, Nevada 89511.  Service to

14   **TCP-1** began on February 6, 2020.  I reviewed public source documents and found a

15   Marcos Del Rio, born in 1963, who was associated with an address in the Las Vegas,

16   Nevada, metropolitan area.  Based on CHS-1's description of UM-1 as in his mid-30's, it

17   does not appear that this Marcos Del Rio (the listed subscriber for **TCP-1**) is UM-1.  I

18   also did a public search engine query for the address of 6148 Mesa Road, Reno, Nevada

19   89511, and did not find a "Marcos Del Rio" associated with the address.  In my

20   experience, I know that drug traffickers often use phones subscribed to other persons,

21   who may or may not have a connection to illegal drug trafficking, in an attempt to thwart

22   law enforcement attempts at identifying the user(s) of a particular phone.  I also know,

23   based on my experience, that sometimes drug traffickers will use alias or wholly fictitious

24   names when obtaining cell phones, driver's licenses, apartment leases, and other facilities

25   to thwart law enforcement.

26       22.    CHS-1 said the February 16, 2020, meeting was the first time s/he had met

27   UM-1.  Investigators showed CHS-1 a photograph obtained from a WhatsApp account

28   linked to **TCP-1**, which depicted a Hispanic male that was approximately 30 to 33 years

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 6
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

old with a medium build and medium length styled hair.  CHS-1 did not recognize the individual depicted in the photograph.

23.     On February 26, 2020, investigators provided CHS-1 with a cellular device to use for further contact with UM-1/**TCP-1**.  CHS-1 then provided investigators with text messages s/he exchanged with **TCP-1** on or about the morning of February 27, 2020. These messages contained the following:

| Sender | Time | Message Contents |
|--------|------|------------------|
| CHS-1 | 10:46am | Hi this is [REDACTED][1] this is my new # so any word yet when the supply should be here. Because I'm ready and got money in hand |
| **TCP-1** | 11:05am | Ok |
| CHS-1 | 11:05am | Ok so when |
| **TCP-1** | 11:06am | This day |
| CHS-1 | 11:07am | So today you got clear |
| **TCP-1** | 11:08am | Yes |
| CHS-1 | 11:10am | Ok ok let me know |

24.     Based on my training and experience, I am aware that drug traffickers will avoid directly referencing narcotics to avoid detection by law enforcement.  It is my belief that the context of the conversation is an attempt by UM-1 (using **TCP-1**) to notify CHS-1 of a pending delivery of methamphetamine, or "clear," to the Vancouver, Washington area.  CHS-1 clarified that "clear" in this conversation referred to methamphetamine.

25.     As of the date of this affidavit, CHS-1 and UM-1 have not met for the drug transaction contemplated in the text messages set forth above.

--------

[1] I have modified the content of this first message to protect the identity of CHS-1.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 7
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

26.     Given the above facts, I believe there is probable cause to believe that UM-1 is using **TCP-1** for drug-related purposes.  I further believe that UM-1 will continue to use **TCP-1** for the foreseeable future.  UM-1 and SOLIS have both told CHS-1 that regular shipments of heroin and methamphetamine would be brought to Southwest Washington.  Based on my training and experience, I am aware that drug trafficking is not a singular offense, and will be conducted repeatedly to gather illicit proceeds.  Given SOLIS and UM-1's comments about their regular drug trafficking activities and desire for CHS-1 to assist in those activities, there is probable cause to believe that UM-1 will continue to use TCP-1 for the foreseeable future.

27.     The location information requested in this affidavit is useful in drug trafficking investigations as the information can be used to: (1) aid surveillance during suspected drug deals; (2) help locate and identify target residences, stash houses, and other storage locations; (3) help identify where known and unknown conspirators live and the vehicles they drive; (4) help identify sources of supply, customers, and other unknown conspirators who assist in the distribution of narcotics and/or help launder the cash drug proceeds; (5) help understand the geographic breadth of the organization and how and where conspiracies operate; and (6) help identify transportation sources used by the conspirators.

**COMMON CHARACTERISTICS OF DRUG TRAFFICKERS**

28.     Based on my training and experience, including experience obtained through participation in this and other investigations involving the distribution of controlled substances, including those targeting long-term conspiracies responsible for the distribution of controlled substances, and based upon my consultation with other experienced law enforcement agents and officers, I know:

     a.  Drug trafficking conspiracies, especially those involving large amounts of narcotics and interstate shipments, usually take place over several months or years, and continue to operate even when enforcement activity results in arrests and/or seizures of drugs and/or money.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 8
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

b. Those involved in the distribution of illicit drugs often travel by vehicle, both domestically and to and/or within foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, or to transport drugs or drug proceeds

c. Illicit drugs are frequently transported into the United States and between cities within the United States in bulk, high-purity form, and drug traffickers attempt to mask the distinct odors of particular drugs during such transport through the use of heat sealing and/or canning devices and/or aromatic substances such as laundry soap, dryer sheets, air fresheners, or axle grease.   Likewise, money is similarly transported in bulk.   It is common for drug traffickers to maintain hidden compartments within vehicles, items altered for the purpose of hiding or concealing drugs, and items purchased and converted for the use of storing their drugs.

d. Furthermore, I know that it is common for drug traffickers to secret drugs, currency and other valuable items representing the proceeds of drug sales within their residences and/or vehicles in order to prevent the theft of such items by other persons or the seizure of such items by law enforcement. These secure locations typically include other residences also known as "stash houses," storage lockers, safes, portable safes, vaults, or other locked containers (sometimes requiring passwords or codes to open), as well as specially constructed concealed compartments such as those often found in "load cars" used specifically to facilitate drug trafficking.

e. I know from my training and experiences, and conversations with other agents, that those involved in long-term conspiracies to distribute illegal drugs often maintain the types of items described above in their residences and/or in their vehicles and travel to such secure locations in their vehicles on an ongoing, long-term basis so as to facilitate the conspiracy and prevent detection.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 9
USAO # 2020R00226

## INFORMATION ON CELLULAR DEVICES

29.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.

30.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

31.     Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 10
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

32.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

33.    In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

34.    Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

35.     When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application initiated data transfers, among other things.

36.     Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

37.     Different service providers use different systems, applications, and reports to collect or analyze cell site data.  These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE, Timing Advance, and TruCall.  RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

38.     Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 12
USAO # 2020R00226

account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators.

39.     Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone. These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone. To provide for any such changes made to the Target Cell Phone, Attachment A specifies that the property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 13
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AUTHORIZATION REQUEST**

40.    Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and  18 U.S.C. § 3123.

41.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

42.    I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T.  I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 14
USAO # 2020R00226

1  government.  The agency shall reasonably compensate AT&T for reasonable expenses
2  incurred in furnishing such facilities or assistance.

3       43.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant
4  by serving the warrant on AT&T.  Because the warrant will be served on AT&T, who
5  will then compile the requested records and data, reasonable cause exists to permit the
6  execution of the requested warrant at any time in the day or night.  I therefore request that
7  the Court authorize execution of the warrant at any time of day or night, owing to the
8  potential need to locate the Target Cell Phone outside of daytime hours.

9       44.    This is the first request in this judicial district for a warrant and PRTT order
10  with respect to **TCP-1** as a part of this investigation.

11       45.    As noted above, I am assigned to the FBI's Vancouver, Washington, office.
12  Thus, I am submitting this affidavit and application electronically in accordance with
13  Local Criminal Rule 41(d)(3).

14
15                                 SEAN THORNTON, Affiant
16                                 Special Agent
17                                 Federal Bureau of Investigation

18
19      The above-named agent provided a sworn statement to the truth of the foregoing
20  affidavit by telephone on the 6th day of March, 2020.

21
22
23                                 THERESA L. FRICKE
24                                 United States Magistrate Judge
25
26
27
28

AFFIDAVIT OF SPECIAL AGENT SEAN THORNTON - 15
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**EXHIBIT 1**

<u>DECLARATION</u>

I, Marci L. Ellsworth, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the Federal Bureau of Investigation is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 6th day of March, 2020.

*s/ Marci L. Ellsworth*
MARCI L. ELLSWORTH
Assistant United States Attorney

EXHIBIT 1 -- PAGE 1
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

### Property to Be Searched and Subscriber/Subject Information

1.     Records and information associated with the cellular phone assigned call number 503-989-7578, with listed subscriber(s) Marcos Del Rio (the "Target Cell Phone"), that are in the custody or control of AT&T, a company headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408.  The subscriber of the Target Cell Phone is Marcos Del Rio.  The identity of the person who is the subject of the criminal investigation and believed to be using the Target Cell Phone is unknown.

2.     The Target Cell Phone.

3.     The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

ATTACHMENT A -- PAGE 1
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding the Target Cell Phone.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

I.    <u>Section I</u>:  **Information to be Disclosed by AT&T**

1.    **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long distance telephone connection records from February 6, 2020, to the date this warrant is served.

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions from February 6, 2020, to the date this warrant is served.

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 Network Number ("MSISDN"), International Mobile Subscriber Identity Identifiers

2 ("IMSI"), or International Mobile Equipment Identities ("IMEI");

3         g.      Other subscriber numbers or identities (including the registration

4 Internet Protocol ("IP") address); and

5         h.      Means and source of payment for such service (including any credit

6 card or bank account number) and billing records.

7     2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records**
**to Be Provided for a Period of 45 Days.**

8

9         a.      AT&T shall install and monitor pen-trap devices to record, decode,

10 and/or capture dialing, routing, addressing, and signaling information associated with

11 each communication to or from the Target Cell Phone including the date, time, and

12 duration of the communication, and the following, without geographic limit and without

13 notice to the subscriber:

14 (i)      IP addresses associated with the cell phone device or devices used to send or

15           receive electronic communications;

16 (ii)     Any unique identifiers associated with the cell phone device or devices used

17           to make and receive calls with cell phone number described in Attachment A,

18           or to send or receive other electronic communications, including the ESN,

19           MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

20 (iii)    IP addresses of any websites or other servers to which the cell phone device

21           or devices connected; and

22 (iv)    Source and destination telephone numbers and email addresses.

23         b.      On a 24-hour-a-day basis, for the duration of the authorized pen-trap

24 devices, AT&T shall provide the following records for those subscribers whose

25 identifiers are obtained pursuant to the use of the pen-trap devices: published or non-

26 published subscriber names and addresses, including billing addresses.

27

28

ATTACHMENT B -- PAGE 2
USAO # 2020R00226

3.     **Historical Cell Cite Location Information.**

     a.     All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from February 6, 2020, to the present, including:

          i.     the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

          ii.     historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by AT&T.  Accordingly, this information includes the following data sets to the extent that they are collected by AT&T: RTT, PLU, PCMD, NELOS, EVDO, TruCall, ALULTE, and Timing Advance.

     b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

4.     **Prospective Cell Site Location Information.**

     a.     All information about the location of the Target Cell Phone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

     b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

5.     **Prospective E-911/GPS and Cell Site Information.**

     a.     All information about the location of the Target Cell Phone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude

data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

      b.    The physical address and coverage maps of cell towers used by the Target Cell Phone.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**    **Section II: Information to Be Seized by the Government**

    1.    All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving unidentified subjects.

    2.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

    3.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

    4.    Location Information regarding the Target Cell Phone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts

ATTACHMENT B -- PAGE 4
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

under government control) are authorized to review the records produced by AT&T in order to locate the things particularly described in this Warrant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT B -- PAGE 2
USAO # 2020R00226

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800